504 So.2d 1153 (1987)
FIRST NATIONAL BANK OF JEFFERSON PARISH
v.
Terrel J. CARMOUCHE.
No. 86-CA-669.
Court of Appeal of Louisiana, Fifth Circuit.
March 16, 1987.
Rehearing Denied April 16, 1987.
*1154 Radar Jackson, Betty F. Mullin, Shushan, Meyer, Jackson, McPherson & Herzog, New Orleans, for plaintiff-appellant.
Don M. Richard, Butler, Heebe, Richard & Hirsch, New Orleans, for defendant-appellee.
Robert A. Mathis, Newman, Drolla, Mathis, Brady & Wakefield, Metairie, for appellee.
*1155 Before CHEHARDY, GRISBAUM and GOTHARD, JJ.
GRISBAUM, Judge.
This appeal relates to a suit by First National Bank of Jefferson (FNJ), issuer of a letter of credit, against Terrel Carmouche, its customer, for funds expended to finance a letter of credit. From a judgment in favor of the defendant-customer, FNJ appeals. We amend and, as amended, we affirm.
We are called upon to determine two specific issues:
(1) Whether the trial court erred in its finding that the issuing bank should not have funded the letter of credit in light of the "actual knowledge" it possessed concerning the documentation of the letter of credit, and
(2) Whether the trial court erred in its awarding attorney's fees in favor of the defendant-customer.

FACTS
During the spring of 1982, Terrel J. Carmouche and David J. Porter, an officer of PAC Oil, Inc. (PAC Oil), discussed the financing of a Texas oil well venture. They entered into a written contract dated May 3, 1982 for the drilling of "Smith Well # 1." Mr. Carmouche contacted Mr. Fred M. Lay, an assistant vice-president and lending officer at FNJ, regarding the establishment of a $150,000 letter of credit in favor of PAC Oil, which would guarantee his portion of drilling costs for the venture. Mr. Lay met with both Carmouche and Porter to draft the letter and was told by them that Colonial Bank would be advancing drilling cost funds to PAC Oil, secured by the proposed letter of credit. On May 7, 1982, FNJ issued an "Irrevocable, Documentary, Letter of Credit"[1] in favor of PAC Oil for the account of Carmouche. In consideration for its issuance, FNJ obtained an executed promissory note by Carmouche for $150,000, plus three pledge agreements pertaining to three collateral notes as security.
Pursuant to prearrangements, FNJ received and acknowledged on May 14, 1982 an "Assignment" of the letter of credit in favor of Colonial, whereby PAC Oil assigned its rights as security for PAC Oil's indebtedness.
On Friday, May 6, 1983, Colonial Bank presented the letter of credit, along with a draft and the certificate of PAC Oil with attachments, at FNJ's Gretna office for payment. The certificate executed on May 6, 1983 by David Porter (who was then vice-president of PAC Oil) stated that the amount of $150,000 to be drawn was owed to PAC Oil by Carmouche. The Gretna office notified Fred Lay that the letter had been presented for funding, and Lay promptly notified his customer, Carmouche. When Carmouche verbally requested the letter not be funded, Lay relayed Carmouche's wishes to the Gretna office. Mr. Glenn Geddis, the FNJ senior vice-president in charge of credit administration, eventually reviewed all documents after two of his credit administration employees, Ms. Sandy Goolsby and Ms. Margarette Goris, determined it should be honored. *1156 Mr. Geddis also felt it should be honored but consulted the bank's counsel for a legal opinion. Counsel advised FNJ that the documents presented complied with the letter; therefore, FNJ was obligated to provide the funding.
In the meantime, Porter advised FNJ through Lay that he no longer was secretary/treasurer of PAC Oil, but was vice-president, and he now was unsure of the amount owed by Carmouche because PAC Oil owed Carmouche an accounting from several different wells in order to determine which costs were incurred at "Smith Well #1." Both Porter and Carmouche requested FNJ to extend the letter of credit at least a month so that a proper accounting could be made to Carmouche. However, FNJ issued its check for $150,000, payable jointly to both PAC Oil and Colonial Bank, thereby funding Carmouche's loan.
Thereafter, Carmouche paid the interest due on the loan, a sum of $4,262.50, in August 1983, but when no further payments were made, this suit for collection was filed in the Twenty-Ninth Judicial District Court by FNJ. Colonial Bank was later joined as a defendant in FNJ's attempt to recover the $150,000, but was dismissed without prejudice by judgment dated January 15, 1985. That judgment maintained Colonial Bank's exceptions of prematurity and improper cumulation of actions. At trial on August 7, 1986, the court dismissed FNJ's suit and granted reconventional awards to Carmouche in the form of a refund of the interest payment, plus attorney's fees, despite the failure of the defendant to request such relief in the pleadings or at trial.

ANALYSIS
La.R.S. 10:X-XXX-XXX sets forth the law governing letters of credit. Specifically, La.R.S. 10:5-109[2] and 5-114[3] provide that unless otherwise agreed, the issuing bank's duty to honor a draft is not affected by the performance or nonperformance of the underlying *1157 contract between the customer and the beneficiary. Recently, the Federal Fifth Circuit elaborated on the "independence principle" in Philadelphia Gear Corp. v. Cent. Bank, 717 F.2d 230 (5th Cir.1983) by succinctly stating:
Such a transaction usually comprises three separate contracts: "[f]irst the issuing bank enters into a contract with its customer to issue the letter of credit. Second, there is a contract between the issuing bank and the party receiving the letter of credit. Third, the customer who procured the letter of credit signs a contract with the person receiving it, usually involving the sale of goods or the provision of some service." (citations omitted) The obligations and duties created by the contract between the issuer and the credit's beneficiary are completely separate from the underlying transaction, with absolutely no consequence given the underlying transaction unless the credit expressly incorporates its terms. (citations omitted) In consequence, the issuer's duty to pay is conditioned solely upon the credit's terms: usually, as here, the beneficiary's presentation of facially conforming documents. (citations omitted) More, the issuer has no obligation to go beyond a facial examination of the tendered documents in determining whether payment is warranted and, in fact, may incur liability if he does so. (footnotes and citations omitted) In addition, the issuer's promise to pay under the credit is irrevocable. In concert, these features facilitate economic exchange by providing the beneficiary a source certain of payment in the event the issuer's customer refuses to pay. (footnote and citations omitted) (emphasis supplied)
Philadelphia Gear Corp., supra at 235. Thereafter, the Louisiana Supreme Court adopted this principle in Cromwell v. Commerce & Energy Bank of Lafayette, 464 So.2d 721 (La.1985).
In this particular letter of credit, the underlying transaction is incorporated as follows, "Your certificate, duly executed by David J. Porter, Secretary/Treasurer of PAC Oil, Inc., stating that the amount drawn under the credit is owed to you by Terrel J. Carmouche as per the written agreement between PAC Oil, Inc., and Terrel J. Carmouche dated May 3, 1982." (emphasis supplied) Essentially, this provision makes as a requisite to honoring the letter the presentation of a certificate executed by David Porter and stating the amount owed by Carmouche. The written agreement is mentioned only as a basis for determining this amount and therefore is "surplusage." Pringle-Associated Mortgage Corp. v. S. Nat'l Bank of Hattiesburg, 571 F.2d 871 (5th Cir.1978). The promise to honor the letter of credit clearly is not made contingent on the satisfactory fulfillment of the May 3, 1982 agreement. Several witnesses testified that the contents of the letter of credit is entirely up to the discretion of the parties involved. Had the customer wished his credit to be funded only upon his satisfaction with PAC Oil's execution of the contract, he should have done so expressly instead of burying mention of the contract in the certificate requirement. As the letter now reads, honor of the $150,000 promise to pay is contingent only upon (1) the presentation of the letter of credit, along with the appropriately marked drafts; (2) Mr. Porter's properly executed certificate; (3) the documentary draft presented must bear the legend "Drawn under First National Bank of Jefferson Parish's Letter of Credit Number 343" and must be payable at sight; and (4) the presentation and delivery must be made at the Gretna office of FNJ on or before May 7, 1983. Accordingly, under the "independence principle" set forth in La.R.S. 10:5-109 and 5-114 and our jurisprudence, execution of the underlying contract is immaterial to the issue of whether the bank's honoring of the letter was proper.
We now must consider whether the documents presented to FNJ complied with the requirements enunciated in the letter of credit. First, the parties dispute whether Colonial Bank, which presented the letter for payment, was properly the beneficiary by virtue of PAC Oil's "assignment," La. R.S. 10:5-116, or whether PAC Oil had *1158 simply pledged the letter and was still the beneficiary. This determination may be made simply by examining the assignment document contained in the record, which states:
ASSIGNMENT
FOR VALUE RECEIVED we do hereby assign and transfer to Colonial Bank all title, rights, and privileges of a certain Irrevocable Documentary Letter of Credit, # 343, dated May 7, 1982, in favor of the undersigned, for the account of Terrel J. Carmouche, and issued by First National Bank of Jefferson Parish, Gretna, Louisiana.
This assignment shall serve as a pledge of collateral for any and all indebtedness of Pac Oil, Inc., to Colonial Bank up to a maximum amount of $200,000.00, whether currently existing or hereafter incurred.
This document bears the signatures of David J. Porter (secretary/treasurer of PAC Oil) and Mr. Fred M. Lay (assistant vice-president of FNJ), along with several witnesses. La.R.S. 10:5-116(1) states, "The right to draw under a credit can be transferred or assigned only when the credit is expressly designated as transferrable or assignable." As this letter of credit mentions nothing of transferability or assignability, we therefore agree with the trial judge's characterization of this "assignment" as a "pledge." Mr. Lay's signature appears to be in compliance with La.C.C. arts. 3158 and 3160. La. Nat'l Bank of Baton Rouge v. O'Brien, 439 So.2d 552 (La.App. 1st Cir.1983), writ denied, 443 So.2d 590 (La.1983). The implication of this, however, is simply that the beneficiary's signature must appear on drafts drawn under the credit. See Uniform Commercial Code Comment 2 under La.R.S. 10:5-116. Contained in the record, Exhibit P-10 is the draft in question. Although there is a line for Terrel J. Carmouche to place his signature, the parties do not dispute that this was a mere courtesy and not essential to honoring the draft. On the reverse side of the draft, we find the endorsement "PAC Oil, Inc. by David J. Porter, Sec/treas," including Porter's signature. There is no dispute that the signature of Porter for PAC Oil was placed there by him; so with the beneficiary's signature, the draft complies with the letter of credit. In addition, the draft in payment is payable to both PAC Oil and Colonial Bank, so both parties received the credit promised in the letter of credit. Logically, Carmouche cannot now complain that the credit has been extended to the wrong party.
We also note the trial court's finding that the letter of credit should not have been funded because it was presented on May 6, 1983, one day prior to the date in the letter, but was not negotiated until the credit was honored on May 11, 1983. The letter itself provides that "all drafts drawn and negotiated in compliance with the terms of this letter of credit will be duly honored upon presentation and delivery of the documents specified above at our main office in Gretna, Louisiana, if negotiated on or before May 7, 1983." (emphasis supplied) In connection with this clause, we note the provision of La.R.S. 10:5-112(1):
A bank to which a documentary draft or demand for payment is presented under a credit may without dishonor of the draft demand or credit
(a) defer honor until the close of the third banking day following receipt of the document; and
(b) further defer honor if the presenter has expressly or impliedly consented thereto.
Failure to honor within the time here specified constitutes dishonor of the draft or demand and of the credit.
The Uniform Commercial Code Comment accompanying this statute further guides us: "A bank called on to honor drafts under a credit must examine the accompanying documents with care. See Section 5-109(2). That may take time. Subsection (1) of this section therefore allows a longer period than in the case of ordinary drafts (Section 3-506) for the decision." Commonsensibly, it would be unreasonable and quite risky to require FNJ to pay out the draft so as to negotiate it when presented *1159 when FNJ was also under a duty to carefully scrutinize the letter and documents upon which the draft is based. La.R.S. 10:5-109(2). The letter and documents were presented in person on Friday, May 6, 1983, and honored on Wednesday, May 11, 1983, three banking days later. Therefore, under La.R.S. 10:5-112 we find the draft and letter both to have been timely submitted and honored under this narrow exception to the time for honoring ordinary drafts provided in La.R.S. 10:3-506. Accordingly, the trial court erred in not affording FNJ such time as described by our Uniform Commercial Code before honoring the draft under the letter of credit issued.
The parties also dispute the sufficiency of the documents on the basis of David Porter's certificate, executed on May 6, 1983, when he admittedly was no longer secretary/treasurer of PAC Oil. The record contains Mr. Porter's certificate, wherein he states:
I, David J. Porter, Secretary-Treasurer of PAC Oil, Inc., certify that $150,000.00 drawn under the Letter of Credit No. 343 is owed to PAC Oil, Inc. by Terrel J. Carmouche as per the written agreement between PAC Oil, Inc. and Terrel J. Carmouche dated May 3, 1982 as evidenced by the attached Statement and Invoices.
This document is signed by David Porter, despite the fact that he apparently was vice-president of PAC Oil at the time. This certificate conforms to those requirements set forth in the letter of credit, and on its face appears valid. Both Porter and Carmouche testified they told FNJ on May 9, 1983 that Porter no longer was secretary/treasurer. Regardless, because of the facially conforming nature of the document executed on May 6, the bank still could properly honor the draft and fund the letter of credit under La.R.S. 10:5-114(2)(b). The testimonies of Porter and Carmouche indicate that Carmouche specifically trusted Porter to execute the proper certificate, not the individual who held the office of secretary/treasurer of PAC Oil. It follows therefore that David Porter's statement in the certificate that he was secretary/treasurer of PAC Oil was an effort to conform to the letter's requirements.
In all other respects, we find the documents presented are in order, complying with the requirements of the letter of credit.
However, beyond documentation, we must decide whether FNJ breached its fiduciary duty to its customer in funding the letter of credit because it had "actual knowledge" that the "amount owed" as stated in the certificate was not correct prior to its funding of the letter of credit. It is apparent the trial court found both Terrel Carmouche and David Porter contacted FNJ prior to funding of the letter of credit to express their concerns over the documentation and the failure of PAC Oil to give Carmouche an accounting. Additionally, the trial court found that David Porter, in the presence of Terrel Carmouche and FNJ bank officials, notified FNJ that, because of the lack of the accounting at that point to FNJ's funding of the letter of credit, they were not sure of the "amount owed" by Carmouche to Porter, as stated in the certificate dated May 3, 1982. On the other hand, the record shows the testimonies of Margarette Goris (FNJ senior vice-president in charge of credit administration), Glenn Geddis (FNJ senior vice-president in charge of credit administration), and Fred Lay (assistant vice-president at FNJ and commercial lending officer) to the effect that the letter of credit documents were carefully scrutinized by no fewer than four qualified individuals (three at the bank and one legal counsel). However, the record is quite clear that none of the bank officials advised its legal advisor, prior to receiving his opinion, of the fact that the customer and the beneficiary advised its officials that the amount owed, as stated in the certificate, was not correct. Moreover, the customer and the beneficiary asked that the letter of credit not be funded until an accounting could be executed to determine the amount owed by Carmouche.
Our statutory law in La.R.S. 10:1-201 states that "good faith" means honesty in fact in the conduct or transaction concerned. Additionally, La.R.S. 10:1-201 *1160 states that a person "knows" or has "knowledge" of a fact when he has actual knowledge of it. Our jurisprudence states that when reasonable doubt exists as to whether the documents conform with the requirements of a letter of credit, the bank has a defense if it honors or dishonors a draft or demand provided the bank acts within reason. Schweibish v. Pontchartrain State Bank, 389 So.2d 731 (La.App. 4th Cir.1980), writ denied, 396 So.2d 885 (La.1980)
From these record facts, we question the bank's honesty in fact when it had actual knowledge that the amount owed was very much in doubt. We must also ask whether, under the facts presented, the bank acted within reason, possessing such doubt as to the amount owed. We recognize that the issuing bank is not to be embroiled in disputes between the beneficiary and/or the creditor or both, and we also appreciate that the issuing bank should only be involved with documentation and not with merchandise or other goods. Additionally, we are ever mindful that the issuing bank's involvement is separate and apart from the transaction between the buyer and the seller and its duties and liabilities are governed exclusively by the terms of the letter of credit, not the terms of the parties' contract with each other. However, our statutory law, along with the Commercial Code dealing with letters of credit, are equally clear that an issuing bank must act in good faith. We find that the issuing bank had actual knowledge that the certificate signed by the beneficiary had been changed in that the amount owed was not known, and this change was communicated by both the customer and the beneficiary to the issuing bank prior to its funding of the letter of credit. Therefore, the documentation presented by FNJ to its attorney was not properly supplemented by the facts as they existed at the point of funding. From these record facts, we find FNJ breached its contractual duties and was not in good faith nor honest in fact because of its actual knowledge of the circumstances.
Regarding the final issue relative to the awarding of attorney's fees, it is well-settled that a party may not recover this expense, except where authorized by statute or provided for by contract. Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756 (La.1985); Keller Ind., Inc. v. Deauville Consultants, Inc., 459 So.2d 636 (La.App. 5th Cir.1984). Specifically, La.C.C. art. 1958 provides for the award of attorney's fees as a result of proving fraudulent behavior. Although numerous cases could be cited for the principle that "fraud vitiates all things" and "the law furnishes a remedy against fraud," no fraud is proven to have occurred here. There was no proof in the record of any fraudulent behavior on any party's behalf to obtain an unfair advantage over Mr. Carmouche. Therefore, the reliance on La. C.C. art. 1958 is misplaced. Otherwise, there are no other statutory or contractual provisions applicable that would warrant an award of attorney's fees to the defendant. The trial court erred in awarding $5,000 in attorney's fees and that part of the judgment is vacated.
For the reasons assigned, that part of the judgment which awards attorney's fees to Carmouche is vacated, and as such, the judgment is amended. In all other respects, the judgment of the trial court is affirmed. All costs of this appeal are to be assessed against the appellant.
AMENDED IN PART AND AFFIRMED.
NOTES
[1] The Letter of Credit reads: Gentlemen:

We hereby establish our Irrevocable Letter of Credit in your favor for the account of Terrel J. Carmouche, 922 Sixth Street, Norco, Louisiana, 70079, available by your drafts on us, payable at sight, for the sum of money not to exceed a total of One Hundred Fifty Thousand Dollars ($150,000.00), when accompanied by this letter of credit and the following document.
Your certificate, duly executed by David J. Porter, Secretary/Treasurer of PAC Oil, Inc., stating that the amount drawn under the credit is owed to you by Terrel J. Carmouche as per the written agreement between PAC Oil, Inc., and Terrel J. Carmouche dated May 3, 1982.
All drafts drawn hereunder bear the legend "Drawn under First National Bank of Jefferson Parish's Letter of Credit Number 343".
We hereby agree with you and all persons negotiating such drafts, that all drafts drawn and negotiated in compliance with the terms of this letter of credit will be duly honored upon presentation and delivery of the documents specified above at our main office in Gretna, Louisiana, if negotiated on or before May 7, 1983.
Except as far as otherwise expressly stated, this letter of credit is subject to the "Uniform Customs and Practice for Documentary Credits" (1974 Revision), International Chamber of Commerce Brochure, Number 290.
[2] La.R.S. 10:5-109 provides:

(1) An issuer's obligation to its customer includes good faith and observance of any general banking usage but unless otherwise agreed does not include liability or responsibility
(a) for performance of the underlying contract between the customer and the beneficiary; or
(b) for any act or omission of any person other than itself or its own branch or for loss or destruction of a draft, demand or document in transit or in the possession of others; or
(c) based on knowledge or lack of knowledge of any usage of any particular trade.
(2) An issuer must examine documents with care so as to ascertain that on their face they appear to comply with the terms of the credit but unless otherwise agreed assumes no liability or responsibility for the genuineness, falsification or effect of any document which appears on such examination to be regular on its face.
(3) A non-bank issuer is not bound by any banking usage of which it has no knowledge.
[3] La.R.S. 10:5-114 provides:

(1) An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract between the customer and the beneficiary. The issuer is not excused from honor of such a draft or demand by reason of an additional general term that all documents must be satisfactory to the issuer, but an issuer may require that specified documents must be satisfactory to it.
(2) Unless otherwise agreed when documents appear on their face to comply with the terms of a credit but a required document does not in fact conform to the warranties made on negotiation or transfer of a document of title or of security or is forged or fraudulent or there is fraud in the transaction
(a) the issuer must honor the draft or demand for payment if honor is demanded by a negotiating bank or other holder of the draft or demand which has taken the draft or demand under the credit and under circumstances which would make it a holder in due course and in an appropriate case would make it a person to whom a document of title had been duly negotiated or a bona fide purchaser of a security; and
(b) in all other cases as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the document but a court of appropriate jurisdiction may enjoin such honor.
(3) Unless otherwise agreed an issuer which had duly honored a draft or demand for payment is entitled to immediate reimbursement of any payment made under the credit and to be put in effectively available funds not later than the day before maturity of any acceptance made under the credit.