515 So.2d 785 (1987)
FIRST NATIONAL BANK OF JEFFERSON PARISH
v.
Terrel J. CARMOUCHE.
No. 87-C-1137.
Supreme Court of Louisiana.
November 30, 1987.
Rader Jackson, Betty F. Mullin, Shushan, Meyer, Jackson, McPherson & Herzog, New Orleans, for applicant.
Don M. Richard, New Orleans, Robert A. Mathis, Newman, Drolla, Mathis, Brady & Wakefield, Metairie, for respondent.
DENNIS, Justice.
In this letter of credit case, an issuing bank, First National Bank of Jefferson Parish, is seeking reimbursement from its customer, Terrel Carmouche, for sums disbursed by the bank to the beneficiary, PAC Oil Co., and its draft endorsee, Colonial Bank. The crucial issue is whether the issuing bank was in "good faith" when it paid the credit, even though the bank was informed by the customer and an employee of the beneficiary that the customer might not owe the sums stipulated in the demand due to some deficiency in the beneficiary's accounting to the customer. After a bench trial, the trial court refused to grant the *786 plaintiff bank reimbursement, finding a breach of the bank's fiduciary duty to Mr. Carmouche and awarding the defendant damages and attorney's fees, despite his failure to file a reconventional demand. The appeals court, 504 So.2d 1153, set aside the award of attorney's fees, but affirmed the balance of the trial court's judgment, holding that the bank was in bad faith because it paid the letter of credit after being notified by both the customer and the beneficiary of a possible overstatement of the customer's indebtedness to the beneficiary. We reverse and remand this case to the court of appeal for a proper adjudication of the plaintiff issuing bank's suit.
Under our letters of credit law, an issuing bank's obligation is independent of the contract between the customer and beneficiary. The bank's duty only extends to the examination of documents, and it does not act in bad faith where it pays on a demand after having been informed of a dispute or possible fraud in the customer's underlying agreement to the beneficiary. The bank is therefore entitled to reimbursement from the customer when it fulfills its obligation to pay out on any proper and timely demand wherein the documents submitted conform with the requirements of the credit.

FACTS
In May of 1982, Terrel Carmouche entered into a written contract with the PAC Oil Co. whereby Mr. Carmouche agreed to partially finance the production costs of drilling an East Texas oil well in exchange for a working interest. In order to secure his payment of these funds, the defendant approached the First National Bank of Jefferson Parish (FNJ), which agreed to issue an irrevocable documentary stand-by letter of credit for the benefit of PAC Oil in exchange for Mr. Carmouche's execution of a promissory note of $150,000 in favor of the Bank, secured by the pledge of three collateral notes.
The letter of credit issued by FNJ required the beneficiary, PAC Oil, to submit a draft on FNJ, for a sum not exceeding $150,000, along with a document certifying that Carmouche was indebted to PAC Oil for the face amount of the draft.[1] PAC Oil conveyed its interest in the formulated draft to the Colonial Bank, pursuant to a security agreement underlying the primary loan between PAC Oil and Colonial financing the drilling operation. On May 6, 1983, Colonial presented FNJ the draft, along with the necessary document executed by PAC certifying that Mr. Carmouche was indebted to PAC for the face amount of the draft ($150,000). FNJ notified its customer, Mr. Carmouche, that the draft had been presented, and that the presenter was demanding payment. Mr. Carmouche verbally asked that FNJ withhold payment because he was not certain that he owed the face amount of the draft to PAC. FNJ's loan manager referred this problem to FNJ's bank vice-president in charge of credit administration, who submitted the package to two credit administration employees, both of whom recommended that the draft be honored. The FNJ vice-president solicited the advice of the bank's attorney. *787 After examining all of the documents, FNJ's attorney informed the bank vice-president that the documents complied with the terms of the letter, and that payment to the presenter was in order.
Before final payment was made, Donald Porter, the officer of PAC who signed the document of certification, informed FNJ that he was not absolutely certain that Mr. Carmouche actually owed PAC the face amount of the draft, as there were some accounting problems which remained to be resolved. Both he and Mr. Carmouche requested that the Bank extend the letter of credit for an additional month so that a more precise accounting by PAC could be made to Mr. Carmouche. FNJ refused to extend, and pursuant to its counsel's advice, paid the $150,000 draft to Colonial and PAC on May 11th. Mr. Carmouche made one interest payment under his promissory note, but thereafter defaulted, causing FNJ to bring this suit for execution on the note and its underlying security.
We granted certiorari to consider whether our court of appeal brethren fell into error in holding that the issuing bank was in bad faith because it paid the letter of credit after it had been apprised of a possible misstatement of the customer's debt to the beneficiary. 508 So.2d 807 (La. 1987). After considering the briefs and oral arguments of the parties, we conclude that we must reverse the judgment of the court of appeal because of an error on the bad faith issue.
In doing so, however, we agree with and therefore affirm the court of appeal's decisions upon most of the other questions dealt with in its opinion. The court correctly held that the documentation submitted by the presenter was in complete compliance with the textual requirements of the letter of credit, cf. Schweibish v. Pontchartrain State Bank, 389 So.2d 731 (La.App. 4th Cir.1980), cert. den., 396 So.2d 885 (La. 1981); that Colonial bank was a proper presenter in this case in conformity with La. R.S. 10:5-112(3) & 10:5-116; that payment of the letter was not conditioned upon the fulfillment of the obligation between PAC and Carmouche, La. R.S. 10:5-109(1)(a); and that the letter of credit was timely presented. La. R.S. 10:5-112(1); UCP art. 8 (1974); art. 16(c) (1983).[2] Although we disagree with the court's statement that no assignment or sale of credit proceeds under La. C.C. art. 2642 can be made where the letter of credit fails to state that performance was "transferrable or assignable," see La.R.S. 10:5-112 and comments; we conclude that it reached the correct result in upholding payment by FNJ to Colonial in this case. FNJ's right to pay depended entirely upon the status of Colonial as holder of the draft, in accordance with the provisions of La.R.S. 10:5-116(3), which were met in the facts below.

Precepts of Law
As defined by the statute, a "letter of credit" is any written engagement by a bank or other "issuer" at the request of a customer to honor demands for payment which comply with the terms of the credit. La.R.S. 10:5-103(1)(a). There are at least three parties in each letter of credit agreement: the party requesting that the letter of credit be issued (the "customer") La.R.S. 10:5-103(1)(g); the party issuing the letter of credit (the "issuer" or "issuing bank") *788 La.R.S. 10:5-103(1)(c); and the party in whose favor the letter of credit is issued (the "beneficiary") La.R.S. 10:5-103(1)(d). In a "documentary" letter of credit, the presenter is required to submit certain identified documents, of a specific content, which establish its right to payment under the letter. Cf. La.R.S. 10:5-108(1) (notation credits); Fair Pavilions, Inc. v. First National City Bank, 19 N.Y.2d 512, 227 N.E. 2d 839, 281 N.Y.S.2d 23 (1967) (illustrating "clean" letters of credit). See Comment, Letters of Credit: Current Theories and Usages, 39 La.L.Rev. 581 at 581 (1979). The bank is under a strict statutory duty to examine the documents with care, La.R.S. 10:5-109(2), and cannot seek reimbursement from the customer if the documents are not in proper compliance with the terms of the letter. See Hawkland & Holland UCC Series § 5-109:02 (art. 5); Philadelphia Gear Corp. v. Central Bank, 717 F.2d 230, 236 (5th Cir.1983) (applying La. law); J. White & R. Summers, Uniform Commercial Code § 18.7, at pp. 742-743. Conversely, the bank will statutorily be entitled to reimbursement when it pays on a facially acceptable presentment, as it has upheld its obligation to the customer to pay on the letter when conforming documents are timely presented. La.R.S. 10:5-114(3); see Lumberman's Acceptance Co. v. Security Pacific National Bank, 86 Cal.App. 3d 175, 150 Cal.Rptr. 69 (1978); Hawkland & Holland, supra, at § 5-109[2]; 114[13].
In discussing the bank's duty to examine documents with care, courts have noted that banks are "mere dealers in documents", whose duty to examine cannot extend beyond the four corners of the instrument. See Cromwell v. Commerce & Energy Bank, 464 So.2d 721, 729 (La.1985); Philadelphia Gear Corp. v. Central Bank, supra, at 235-236; Consolidated Aluminum Corp. v. Bank of Virginia, 544 F.Supp. 386, 395 (D. Md.1982); Intraworld Industries, Inc. v. Girard Trust Bank, 461 Pa. 343, 336 A.2d 316, 322-323 (1975). Put another way, the bank is under no duty to look beyond the documents themselves or to search for defects in the underlying transaction, and may safely pay on a timely submitted draft when the documents submitted facially conform with the terms of the credit. La.R.S. 10:5-114(1); 10:5-109(2); UCP arts. 7, 9 (1974), 15, 17 (1983); Hawkland & Holland, supra, at § 5-109[2]. Cf. Rubenstein, Issuer's Rights and Obligations Under Letters of Credit, 17 U.C.C. L.J. 129, 143-46, 156 (1984). The reason for such a rule is clear. If a bank were required to conduct an investigation of the circumstances underlying the transaction before making a decision to honor the letter of credit, use of the device would become prohibitively expensive. See Marino Industries v. Chase Manhattan Bank, 686 F.2d 112, 115 (2nd Cir.1982). Under the independence principle, adopted in La.R.S. 10:5-109(2), a bank's respective contracts with the customer and the beneficiary will not be affected by the unenforceability of the customer's contract with the beneficiary, unless the terms of the credit so provide. See Raiffeisen Zentralkasse Tirol v. First National Bank in Aspen, 671 P.2d 1008, 1009 (Colo.Ct.App.1983). Thus, the issuing bank is entitled to make payment upon submission of the necessary documents in facial compliance with the terms of the credit; no actual performance of the beneficiary's contract with the customer is required. La.R.S. 10:5-109(2); see Rubenstein, supra, at pp. 143-46. This allows the beneficiary to practically eliminate the risk of non-payment by the customer, who becomes obliged to reimburse the bank when payment according to proper documentation is made. La.R.S. 10:5-114(3); 5-114 Comment (2); See J. White & R. Summers, supra, at § 18-1; McCullough, supra, at § 3.08[3]; Comment, Letters of Credit: Current Theories and Usages, 39 La.L.Rev. 581, 582-585 (1979); Rubenstein, supra, at 129-30.
The bank's duty of good faith or obligation of honesty-in-fact in its conduct and transactions, La.R.S. 10:1-201 & 1-203, and of payment on letters of credit, La.R.S. 10:5-114(2)(b), must be understood in light of the above statutory scheme. The bank's obligation to pay on the letter is entirely independent of the underlying contract of the customer and beneficiary, La.R.S. 10:5-109(1)(a), and payment may be made regardless *789 of actual knowledge of fraud dehors the documents. La.R.S. 10:5-114(2)(a); See Braun v. Intercontinental Bank, 466 So.2d 1130, 1132 (Fla.Dist.Ct. App.1985); Auto Servicio San Ignacio, S.R.L. v. Compania Anonima Venezolana De Navegacion, 765 F.2d 1306, 1310-11 (5th Cir.1985) (applying La. law). Simply put, a bank is no less "honest in fact" when it pays having knowledge of possible fraud, as it incurs "no liability or responsibility for the genuineness, falsification, or effect of any document which appears on examination to be regular on its face." La.R.S. 10:5-109(2); UCP arts. 9, 8 (1974) 17, 16(b) (1983); see Shaffer v. Brooklyn Park Garden Apts., 311 Minn. 452, 250 N.W.2d 172, 179-80 (1977); Cf. Lustrelon Inc. v. Prutscher, 178 N.J.Super. 128, 428 A.2d 518 (1981). All parties to the original letter of credit agreement must consent before the requirements of the credit are amended, and an issuer is not in "bad faith" when it refuses to amend a contract pursuant to a mutual request by the customer and beneficiary. See AMF Head Sports Wear, Inc. v. Ray Scott's All American Sports Club, Inc., 448 F.Supp. 222, 224 (D.Ariz. 1978).
The rules governing cases in which the issuer has notice of forgery or fraud in the documents or transaction and the customer seeks to enjoin payment are to be distinguished from the rules applicable to the present case. Where a demand for payment appears to comply with the terms of a letter of credit, but a document required by the terms of the credit is forged or fraudulent, or where there is fraud in the transaction, the customer may seek an injunction if the presenter fails to qualify as a holder in due course; Hawkland & Holland, supra, at § 5-114:06. Correspondingly, a bank has an option not to pay in such circumstances; but may do so if the presentment is otherwise in order. La.R.S. 10:5-114(2)(b). In the present case, however, even if we assume without deciding that the issuing bank had been given notice of forgery or fraud, and that Colonial was not a holder in due course, these rules do not apply because the customer did not seek an injunction and the bank did not withhold payment.

Application of Precepts to the Facts of this Case
In this case, the issuing bank was presented with a timely demand for payment, and the documents submitted by the presenter were in complete compliance with the terms of the letter of credit. The presenter, Colonial Bank, possessed the draft submitted under a proper endorsement, pursuant to the requirements of La.R.S. §§ 10:5-112(3) & 10:5-116. Under La.R.S. 10:5-114, FNJ as issuer had an obligation to pay, in the absence of notice of fraud or forgery. Even if FNJ had such notice, it had the option to pay, in the absence of an injunction by the appropriate local court. In either case, since no injunction was issued, FNJ fulfilled its obligation under the letter, and is entitled to performance of its customer's contract of reimbursement.
The knowledge by FNJ of the defect in PAC's accounting to Mr. Carmouche does not render the bank's payment an action in bad faith. The statutory scheme clearly grants to the bank an option to pay in such circumstances, as its obligation to pay is independent of the customer's obligation to the beneficiary. This is not a case where the parties stipulated in the letter of credit that it was revocable at the will of the customer, or one in which payment under the letter was made subject to the successful performance of the beneficiary's obligation to the customer. Nor is it a case in which all parties concerned, including the bank, agreed to amend the letter. The bank's obligation was clearly stated in the letter, and it fully complied with its duty.
The judgments of the trial and appeals courts are reversed and set aside and the case is remanded to the court of appeal for further proceedings including the rendition of a proper judgment in favor of the plaintiff on this record.
REVERSED AND REMANDED.
NOTES
[1] The Letter of Credit reads:

Gentlemen:
We hereby establish our Irrevocable Letter of Credit in your favor for the account of Terrel J. Carmouche, 922 Sixth Street, Norco, Louisiana, 70079, available by your drafts on us, payable at sight, for the sum of money not to exceed a total of One Hundred Fifty Thousand Dollars ($150,000.00), when accompanied by this letter of credit and the following document.
Your certificate, duly executed by David J. Porter, Secretary/Treasurer of PAC Oil, Inc., stating that the amount drawn under the credit is owed to you by Terrel J. Carmouche as per the written agreement between PAC Oil, Inc., and Terrel J. Carmouche dated May 3, 1982.
All drafts drawn hereunder bear the legend "Drawn under First National Bank of Jefferson Parish's Letter of Credit Number 343".
We hereby agree with you and all persons negotiating such drafts, that all drafts drawn and negotiated in compliance with the terms of this letter of credit will be duly honored upon presentation and delivery of the documents specified above at our main office in Gretna, Louisiana, if negotiated on or before May 7, 1983. Except as far as otherwise expressly stated, this letter of credit is subject to the "Uniform Customs and Practice for Documentary Credits" (1974 Revision), International Chamber of Commerce Brochure, Number 290.
[2] The parties to this letter of credit have expressly subjected their agreement to the Uniform Customs and Practice for Documentary Credits rules adopted by the International Chamber of Commerce (1974 Revision). These rules, which apply only to documentary letters of credit issued by banks, will be binding on parties only to the extent they agree to be found, and can be used by this court as suppletive rules of law in contract resolution disputes. See Hawkland & Holland, supra, at § 5-102:07. Since the parties have expressly adopted the UCP in their contract, the UCP provisions will control where there is a conflict with the provisions of La.R.S.

10:5-101 et seq.; barring any mandatory provision of our letter of credit law. La.R.S. 1-201(3); see Courtaulds North America, Inc. v. North Carolina National Bank, 528 F.2d 802, 805 (4th Cir. 1975); Hawkland & Holland, supra at § 5-102:07. However, to the extent both are consistent, both authorities may be referred to as rules of decision. See Consolidated Aluminum Corp. v. Bank of Virginia, 704 F.2d 136, 138 (4th Cir.1983). In this case, there is no conflict between the two provisions, and we have cited both authorities where pertinent. We have also cited the 1983 UCP article numbers in addition to those of the controlling 1974 Revision as an aid to future research.