573 So.2d 1324 (1991)
OFFICE OF CONSERVATION OF the STATE OF LOUISIANA, Plaintiff,
v.
PROGRESSIVE NATIONAL BANK OF RAYNE, Third Party Plaintiff-Appellant,
Cameron State Bank, Third Party Defendant-Appellee.
No. 89-824.
Court of Appeal of Louisiana, Third Circuit.
February 6, 1991.
George C. Gibson, New Orleans, for plaintiff-appellee.
Durio, McGoffin & Stagg, Gary C. McGoffin, Lafayette, for defendant-appellant (Bank).
Jones, Jones & Alexander, Glenn W. Alexander, Cameron, La., for defendant-appellee Cameron State Bank.
Before GUIDRY, STOKER and DOUCET, JJ.
GUIDRY, Judge.
Third party plaintiff, Progressive National Bank of Rayne (hereafter Progressive), appeals a judgment of the trial court dismissing its claims against third party defendant, Cameron State Bank (hereafter Cameron). We affirm.
This suit was brought by the Office of Conservation of the State of Louisiana against Progressive seeking collection on a $60,000.00 letter of credit issued by Progressive to it. Progressive filed a third party demand against Cameron seeking payment on a letter of credit issued by Cameron to Progressive in the same amount.
Progressive's letter of credit was designated as Number 125 and was issued on March 5, 1985. This letter of credit was provided to the Office of Conservation as security to insure the adequate closure of a non-hazardous oil field waste treatment facility owned and operated by Cameron and Progressive's customer, ECO Industries, Inc. (hereafter ECO).
In conjunction with the issuance of this letter of credit, Progressive obtained an *1325 irrevocable letter of credit in the amount of $60,000.00 from Cameron, at the request and for the account of ECO, designated as Cameron's Number 128. Prior to issuance of the letters of credit, Cameron's representative, Ricky Guidry, discussed with Progressive's president, Rayford Simon, the fact that ECO was in bankruptcy and that Cameron's letter of credit would contain a specific condition that permission through the Bankruptcy Court would have to be obtained prior to payment of any funds under its letter of credit. The Cameron letter of credit was secured by a certificate of deposit previously issued by Cameron to ECO in the amount of $60,000.00. The Cameron letter of credit provides as follows:
"We hereby establish our irrevocable Letter of Credit no. 128 in your favor, at the request and for the account of ECO Industries, Inc., 532 New Road, Waco, Texas 76710, up to the aggregate amount of $60,000.00 available upon presentation by the Progressive National Bank of Rayne of:
(1) Your sight draft, bearing reference to this Letter of Credit No. 128, and
(2) Your signed statement reading as follows: `I certify that the amount of the draft is payable pursuant to regulations issued in accordance with the requirements of La.R.S. 30:1 et seq.', and
(3) Permission through the Bankruptcy Court for the movement of funds by wire from Cameron State Bank to Progressive National Bank of Rayne.
This Letter of Credit is effective as of March 6, 1985, and shall expire on March 6, 1986, but such expiration date shall be automatically extended for a period of at least one year on March 6, 1986 and on each successive expiration date, unless at least 120 days before the current expiration date we notify both you and ECO Industries, Inc., by certified mail that we have decided not to extend this Letter of Credit beyond the current expiration date. In the event you are so notified, any unused portion of the credit shall be available upon presentation of your sight draft for 120 days after the date of receipt by both you and ECO Industries, Inc., as shown on the signed return receipt."
This letter was renewed making it effective until March 6, 1987.
By letter dated October 31, 1986, Cameron notified Progressive and ECO by certified mail that it would not extend letter of credit number 128 beyond the current expiration date, i.e., March 6, 1987. This notice allowed Progressive 126 days for Progressive to properly call upon the letter of credit pursuant to its terms.
On March 2, 1987, four days prior to the expiration of Cameron's letter of credit, Progressive notified Cameron of its intent to draw on the letter of credit and forwarded a sight draft in the amount of $60,000.00 and the signed statement required by letter of credit number 128. Progressive did not however, provide Cameron with authority from the Bankruptcy court permitting movement of funds by wire from Cameron to Progressive. Progressive did furnish Cameron with a copy of Progressive's application to the Bankruptcy Court seeking authority for the movement of the funds represented by the certificate of deposit securing letter of credit number 128. March 6, 1987 passed without any Bankruptcy Court authorization or permission being obtained, and by its own terms, the letter of credit expired.
By default judgment rendered on June 17, 1987, the United States Bankruptcy Court for the Western District of Texas, Waco Division, ordered Cameron to deliver and account to the Trustee for the $60,000.00 certificate of deposit which secured Cameron's Letter of Credit No. 128. The funds were then forwarded to W.B. Phillips, Trustee, in accordance with the Bankruptcy Court's order.
In his reasons for judgment, the trial judge found:
"As to the third-party demand of Progressive, the Court finds that the Letter of Credit No. 128 expired on March 6, 1987, when Progressive failed to present evidence of `permission through the Bankruptcy Court for the movement of *1326 funds by wire from Cameron State Bank to Progressive National Bank of Rayne.' Regarding Progressive's argument that the application for permission prior to the expiration date satisfied the letter of credit, the Court does not find it plausible that Cameron would have released the funds with the possibility that permission might be denied at a future date. Therefore, the Court finds in favor of Cameron State Bank on the third-party demand."
On appeal Progressive argues that:
(1) permission of the Bankruptcy Court was no longer required once Cameron notified Progressive and ECO that it was not going to extend its letter of credit;
(2) Cameron should have been ordered to honor its letter of credit to Progressive under the doctrine of substantial compliance; and/or,
(3) the condition of the letter of credit requiring permission from the Bankruptcy Court was fulfilled and/or its nonfulfillment should have been excused as it was the fault of Cameron.
The most recent discussion by the Louisiana Supreme Court of the law concerning letters of credit was in First National Bank of Jefferson Parish v. Carmouche, 515 So.2d 785 (La.1987), wherein the court stated:
"As defined by the statute, a "letter of credit" is any written engagement by a bank or other "issuer" at the request of a customer to honor demands for payment which comply with the terms of the credit. La.R.S. 10:5-103(1)(a). There are at least three parties in each letter of credit agreement: the party requesting that the letter of credit be issued (the "customer") La.R.S. 10:5-103(1)(g); the party issuing the letter of credit (the "issuer" or "issuing bank") La.R.S. 10:5-103(1)(c); and the party in whose favor the letter of credit is issued (the "beneficiary") La.R.S. 10:5-103(1)(d). In a "documentary" letter of credit, the presenter is required to submit certain identified documents, of a specific content, which establish its right to payment under the letter. Cf. La.R.S. 10:5-108(1) (notation credits); Fair Pavilions, Inc. v. First National City Bank, 19 N.Y.2d 512, 227 N.E.2d 839, 281 N.Y.S.2d 23 (1967) (illustrating "clean" letters of credit). See Comment, Letters of Credit: Current Theories and Usages, 39 La.L.Rev. 581 at 581 (1979). The bank is under a strict statutory duty to examine the documents with care, La.R.S. 10:5-109(2), and cannot seek reimbursement from the customer if the documents are not in proper compliance with the terms of the letter. See Hawkland & Holland UCC Series § 5-109:02 (art. 5); Philadelphia Gear Corp. v. Central Bank, 717 F.2d 230, 236 (5th Cir.1983) (applying La. law); J. White & R. Summers, Uniform Commercial Code § 18.7, at pp. 742-743. Conversely, the bank will statutorily be entitled to reimbursement when it pays on a facially acceptable presentment, as it has upheld its obligation to the customer to pay on the letter when conforming documents are timely presented. La.R.S. 10:5-114(3); see Lumberman's Acceptance Co. v. Security Pacific National Bank, 86 Cal.App.3d 175, 150 Cal.Rptr. 69 (1978); Hawkland & Holland, supra, at §§ 5-109[2]; 114[13].
In discussing the bank's duty to examine documents with care, courts have noted that banks are "mere dealers in documents", whose duty to examine cannot extend beyond the four corners of the instrument. See Cromwell v. Commerce & Energy Bank, 464 So.2d 721, 729 (La.1985); Philadelphia Gear Corp. v. Central Bank, supra, at 235-236; Consolidated Aluminum Corp. v. Bank of Virginia, 544 F.Supp. 386, 395 (D.Md. 1982); Intraworld Industries, Inc. v. Girard Trust Bank, 461 Pa. 343, 336 A.2d 316, 322-323 (1975). Put another way, the bank is under no duty to look beyond the documents themselves or to search for defects in the underlying transaction, and may safely pay on a timely submitted draft when the documents submitted facially conform with the terms of the credit. La.R.S. 10:5-114(1); 10:5-109(2); UCP arts. 7, 9 (1974), 15, 17 (1983); Hawkland & Holland, *1327 supra, at § 5-109[2]. Cf. Rubenstein, Issuer's Rights and Obligations Under Letters of Credit, 17 U.C.C.L.J. 129, 143-46, 156 (1984). The reason for such a rule is clear. If a bank were required to conduct an investigation of the circumstances underlying the transaction before making a decision to honor the letter of credit, use of the device would become prohibitively expensive. See Marino Industries v. Chase Manhattan Bank, 686 F.2d 112, 115 (2nd Cir.1982)....
All parties to the original letter of credit agreement must consent before the requirements of the credit are amended, and an issuer is not in "bad faith" when it refuses to amend a contract pursuant to a mutual request by the customer and beneficiary. See AMF Head Sports Wear, Inc. v. Ray Scott's All American Sports Club, Inc., 448 F.Supp. 222, 224 (D.Ariz.1978)."
See also Exxon Company, U.S.A., A Division of Exxon Corporation v. Banque de Paris et des Pays-Bas, 828 F.2d 1121 (5th Cir.1987).
Appellant argues that once Cameron notified Progressive of its intent not to renew its letter of credit, the three requisites of the first part of the letter were replaced by wording in the last quoted sentences which simply required "presentation of your sight draft". We find no merit in this contention. It is well settled that all clauses of agreements are to be interpreted, the one by the other, giving to each the sense that results from the entire agreement. La.C.C. arts. 2050 and 2053. See also Lambert v. Maryland Casualty Company, 418 So.2d 553 (La.1982) and McNeal v. Wyeth-Scott, Inc., 415 So.2d 568 (La. App. 3rd Cir.1982). It would be folly to conclude that the parties intended that Cameron would require permission through the Bankruptcy Court to transfer the funds represented by the ECO certificate of deposit only so long as it was willing to extend its letter of credit, but would waive that requirement once it decided not to renew the letter.
Likewise, we find without merit Progressive's argument that its submission of a copy of its application to the Bankruptcy Court for the movement of funds from Cameron to itself evidences substantial compliance with the terms of the letter of credit. In support of its argument that the doctrine of "substantial compliance" has been adopted in Louisiana, Progressive cites Schweibish v. Pontchartrain State Bank, 389 So.2d 731 (La.App. 4th Cir.1980), writ denied, 396 So.2d 885 (La.1981). Appellant's reliance is misplaced. In both the Carmouche and Schweibish cases, the court found strict compliance to be the law in Louisiana. However, in Schweibish the court pointed out that where a bank had not required strict compliance in its past dealings with a customer, but rather, had accepted substantial compliance, it was estopped from assuming a totally inconsistent position in dealing with that customer by insisting upon strict compliance in the handling of a subsequent letter of credit.
Finally, appellant argues that Cameron should be held accountable for failing to preserve ECO's $60,000.00 C.D. while Progressive sought authority from the Bankruptcy Court. Cameron's letter of credit to Progressive expired March 6, 1987. Progressive was notified by Cameron 126 days prior to that date that the letter of credit would not be extended beyond March 6, 1987. Upon close of business March 6, 1987, any duty Cameron owed to Progressive in connection with the letter of credit ceased. Progressive cannot now complain that its failure to act timely is somehow the fault of Cameron.
For these reasons, the judgment of the trial court is affirmed. All costs of this appeal are to be borne by appellant, Progressive National Bank of Rayne.
AFFIRMED.