587 So.2d 203 (1991)
Robert K. IRWIN, Plaintiff-Appellee,
v.
FIRST NATIONAL BANK OF LAFAYETTE, Defendant-Appellant.
No. 90-212.
Court of Appeal of Louisiana, Third Circuit.
October 2, 1991.
Writ Denied December 13, 1991.
Chester R. Cedars, Breaux Bridge, for plaintiff-appellee.
Carmouche Firm, H. Paul Honsinger, C. Eston Singletary, Donald C. Brown, Lake Charles, for defendant-appellant.
Before FORET and DOUCET, JJ., and CULPEPPER[*], J. Pro Tem.
DOUCET, Judge.
This matter concerns a letter of credit transaction. The facts are not in question, having been stipulated to by the parties.
In the latter part of 1981, the plaintiff-appellee, Robert K. Irwin, invested in LeCheval II, a Louisiana Partnership in Commendam. As consideration for an interest in the partnership, Irwin executed a $45,000 promissory note in favor of LeCheval II, issued a check for $3,200 to LeCheval II, and secured a $10,000 letter of credit naming LeCheval II as beneficiary.
The letter of credit had a term of one year and a new one was provided each year. In December 1984, the following letter of credit was issued by Citizens National Bank (Citizens):
*204
December 31, 1984
IRREVOCABLE LETTER OF CREDIT NO. 4-84
Amount - $10,000.00
Le Cheval, II, a Louisiana
Partnership in Commendam
218 Rue Beauregard, Suite B
Lafayette, LA 70508
Gentlemen:
We hereby open our irrevocable letter of credit in your favor for the account of Robert K.
Irwin of Lafayette, Louisiana, for a sum or sums not exceeding in the aggregate the sum
of $10,000.00, available by your draft drawn on our bank, at sight. The draft must be
negotiated or presented on or before December 31, 1985. The letter of credit is transferable
and/or assignable in whole or in part.
All drafts must be marked "Drawn on Robert K. Irwin, Letter of Credit No. 4-84". The
amount of any draft drawn under this letter must be endorsed on the reverse hereof, and
the presentation of the drafts, if negotiated, shall constitute a representation and warranty
by the negotiating bank to be relied on by us that such endorsement has been made, if no
drafts are negotiated, this credit must be surrendered to this bank on its expiration. The
credit must accompany any draft which exhausts it, and must be surrendered upon
presentation of such draft.
Except so far as otherwise expressly stated, this credit is subject to Uniform Customs and
Practice for Documentary Credit (1974 Revision) International Chamber of Commerce
Brochure No. 290.
We hereby agree with the drawer, endorser and bona fide holders of draft drawn under and
in compliance with this letter of credit that the same shall be duly honored on due presents
to the drawee.
Sincerely,
/s/ signature
Wayne Robideaux
President
Irwin appointed Kenneth Guilbeaux, general partner of LeCheval II, to be his agent and attorney-in-fact "to pledge or assign my Installment Note(s) or Letter(s) of Credit to any financial institution or other lender to secure the repayment of loans of the Partnership."
In 1981, a "Pledge of Collateral" was executed by Kenneth Guilbeaux on behalf of an entity described as "LeCheval Esprit des Acadiens, II", a Louisiana Partnership in Commendam, which purported to pledge, among other things, the Irwin letter of credit to the defendant-appellee, First National Bank (FNB), as security for a promissory note. Guilbeaux was also general partner for a limited partnership known as LeCheval Esprit des Acadiens. Each year from 1983 through 1985, Guilbeaux executed notes on behalf of "LeCheval Esprit des Acadiens, II" to renew the unpaid balance due on the 1981 note. Each note was secured by a pledge of collateral which included the Irwin letter of credit.
*205 On December 26, 1985, FNB presented to Citizens its sight draft in the amount of $10,000, along with the Irwin letter of credit. Citizens paid the draft. Irwin reimbursed Citizens the amount of $10,000 plus $360.36 in interest.
On July 16, 1986, Irwin filed suit against FNB alleging that FNB had wrongfully presented the letter of credit for payment. The matter was submitted to the trial court on briefs and stipulations in lieu of a trial in open court. The trial judge found that FNB's presentment of the letter of credit was improper and rendered judgment in favor of Irwin in the amount of $10,360.36, plus lost interest of $2,200 and general damages of $1,000. FNB appeals. We affirm.
After reviewing the record, we conclude, as did the trial judge, that the Irwin letter of credit was pledged or assigned to secure the debt of LeCheval Esprit des Acadiens, not a debt of LeCheval II. FNB's contention that there was confusion regarding the names of the two partnerships which led to wrongly naming the debtor in the loan documents is without merit. FNB admits that it had dealings with both entities. FNB was aware that two separate entities existed, as well as of the identity of each.
FNB further contends since LeCheval II received the loan proceeds it was indebted to FNB for repayment. However, the documentary evidence makes it clear that LeCheval Esprit des Acadien was maker of the notes. As such, it alone was responsible for repayment, regardless of who received the funds. There is no evidence that LeCheval II undertook any responsibility for repayment.
Finally, appellant argues that the "independence principle" precludes any liability on the part of the presenting party. Appellant misreads the law on this point. The "independence principle" is embodied in La.R.S. 10:5-114 which provides that an issuing bank's duty to honor a draft under a letter of credit is not affected by the performance or nonperformance of the underlying contract between the customer and the beneficiary. First National Bank of Jefferson Parish v. Carmouche, 515 So.2d 785 (La.1987) on remand 522 So.2d 704 (La.App. 5th Cir.1988). This principle protects an issuing bank, in this case Citizens, from liability. It provides no protection for a presenting bank.
By its terms, the letter of credit was issued for the benefit of LeCheval II only. The evidence establishes that FNB was aware of this. FNB's presentment of the letter for payment of a debt not that of LeCheval II was improper. La.R.S. 10:5-111 provides that:
"(1) Unless otherwise agreed the beneficiary by transferring or presenting a documentary draft or demand for payment warrants to all interested parties that the necessary conditions of the credit have been complied with. This is in addition to any warranties existing under the law.
(2) Unless otherwise agreed a negotiating, advising, confirming, collecting or issuing bank presenting or transferring a draft or demand for payment under a credit warrants only the matters warranted by a collecting bank under Chapter 4."
Chapter 4 provides the following warranties:
"(1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that
(a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title;"
La.R.S. 10:4-207.
FNB did not have authority to obtain payment on behalf of LeCheval II.
Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by the defendant-appellant.
AFFIRMED.
NOTES
[*] Honorable William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.