AMF HEAD SPORTS WEAR, INC., a Maryland Corporation, Plaintiff,

v.

RAY SCOTT'S ALL–AMERICAN SPORTS CLUB, INC., an Arizona Corporation, and the American Bank of Commerce, an Arizona Banking Corporation, Defendants.

No. Civ. 76–815 Phx. WPC.

United States District Court, D. Arizona.

April 4, 1978.

E. J. Peskind, P.A., Phoenix, Ariz., for plaintiff.

Bruce G. Arnold, of Kriehn & Arnold, Phoenix, Ariz., for defendant American Bank of Commerce.

## MEMORANDUM AND ORDER

COPPLE, District Judge.

AMF Head Sports Wear, Inc. (AMF), a Maryland corporation, shipped goods to Columbus, Indiana, pursuant to an agreement with Ray Scott's All-American Sports Club, Inc. (Ray Scott), an Arizona corporation. AMF expected payment under a letter of credit issued by the American Bank of Commerce, an Arizona banking corporation. The bank refused payment, however, because the letter of credit required delivery of the shipment to Scottsdale, Arizona, instead of Columbus.

Plaintiff AMF points out the deposition testimony of the American Bank's officers that the bank issued the letter of credit for its customer without checking the financial status of Ray Scott. When AMF presented the letter of credit and supporting documents in June 1976, the bank had reason to believe that Ray Scott would be unable to reimburse the bank. Inasmuch as the documents presented did not comply with the shipping terms of the letter of credit, however, the bank was able to extricate itself from a precarious financial position.[1] The bank thereafter refused to amend the letter of credit to provide for a different shipping point.[2]

By prior memorandum and order, the Court allowed a claim to be stated for wrongful dishonor of the letter of credit. "The complaint alleges that the bank refused to modify the letter of credit even though both AMF and Ray Scott's requested modification. If the bank had a duty to modify under these circumstances the dishonor would be wrongful because the asserted justification for dishonor would exist

only because of the bank's breach of its duty." *See* Memorandum and Order, *AMF Head Sports Wear v. Ray Scott's All-American Sports Club*, Civ. 76–815, Docket No. 29 (May 25, 1977). The action is now before the Court on cross-motions for summary judgment. The sole issue presented is whether an issuer bank ever has a duty to amend a letter of credit upon the request of a customer and a beneficiary?

█ Normally, an issuer bank must honor a letter of credit only if the beneficiary strictly complies with its terms.

> . . . the drawee bank is not to be embroiled in disputes between the buyer and the seller, the beneficiary of the credit. The drawer is involved only with documents, not with merchandise. Its involvement is altogether separate and apart from the transaction between the buyer and the seller; its duties and liability are governed exclusively by the terms of the letter, not the terms of the parties' contract with each other. Moreover, as the predominant authorities unequivocally declare, the beneficiary must meet the terms of the credit—and precisely—if it is to exact performance of the issuer. Failing such compliance there can be no recovery for the drawee.

*Courtaulds North America, Inc. v. N. C. Nat. Bank*, 528 F.2d 802, 805 (4th Cir. 1975). The Uniform Commercial Code (UCC) does create the possibility that a letter of credit can be amended so that instances of wrongful dishonor can be bypassed.

> It must not be thought that every instance of alleged noncompliance generates a dispute leading to wrongful dishonor. When doubts arise in the issuer's mind as to whether or not a presentment complies, it is not at all uncommon for the issuer to reach an agreement whereby the customer in effect waives the alleged noncompliance or makes some other ad-

---

1. The bank did not formally dishonor the letter of credit until July 8, 1976. The bank alleges that AMF had actual notice of dishonor in June 1976.

2. The letter of credit expired on June 20, 1976. On the record, a genuine issue of fact exists as to whether the bank was orally requested to amend the letter of credit prior to its expiration. For purposes of this opinion, the Court will assume that such a request was timely made.

justment so that the occasion for the beneficiary to assert wrongful dishonor does not arise.

J. White & R. Summers, Uniform Commercial Code § 18.6 at p. 623 (1972).

Plaintiff argues that the possibility of amendment can arise to a duty to amend. The catalyst for this transformation is either an obligation to act in good faith or an obligation to act in accordance with banking custom and usage.

> Like all agreements under the Code, that agreement [letter of credit] is the bargain of the parties in fact . . . and includes the obligation of good faith imposed by Section 1–203 and the observance of any course of dealing or usage of trade made applicable by Section 1–205.

UCC § 5–109 Comment 1; *see* A.R.S. § 44–2709. Although these obligations are explicitly made only a part of an issuer bank's duties to its customer, similar duties also extend to the beneficiary of a letter of credit. *See* A.R.S. § 44–2702(C); UCC § 5–102(3).

■ *Good Faith.* "Good faith" means honesty in fact in the conduct or transaction concerned. A.R.S. § 44–2208(19); UCC § 1–201(19). The defendant bank was not dishonest in any transaction in this action. Dishonor of a demand for payment when the demand does not comply with the terms of the letter of credit cannot constitute bad faith. Furthermore, the obligation of an issuer bank to act in good faith does not, by itself, impose a duty to rewrite a contract.

> Every *contract* or *duty* within this Act imposes an obligation of good faith in its performance or enforcement.

A.R.S. § 44–2210 (emphasis added); UCC § 1–203. Insofar as the issue is whether a duty to modify exists, to argue that good faith requires this duty is to put the cart before the horse. The contract between the issuer bank and its customer does not require the issuer bank to modify the contract. The good faith performance and enforcement of the contract does not thereby require the bank to modify the letter of credit.

*Usage of Trade.*

A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts. If it is established that such a usage is embodied in a written trade code or similar writing the interpretation of the writing is for the court.

A.R.S. § 44–2212(B); UCC § 1–205(2). The defendant bank relies upon a written trade code, the "Uniform Customs and Practice for Documentary Credits (UCP)," to establish banking practice. The UCP states that ". . . [an irrevocable letter of credit] can neither be amended nor cancelled without the agreement of all parties thereto." UCP Art. 3(c). Boris Kozolchyk, an expert on commercial letter of credit practice, testifies by affidavit that the UCP governs the actual practices in the banking industry in Arizona: "The customs and practice of banking usage . . . permit an Issuing Bank absolute discretion in determining whether to issue an amended letter of credit, notwithstanding the request or agreement to such amendment by both the Bank's customer and the beneficiary."

The plaintiff AMF argues that the UCP is silent as to whether a bank must acquiesce to the reasonable amendment demands of a customer and beneficiary. The Court concludes otherwise. The UCP plainly requires the consent of all, not just two parties to the letter of credit. Plaintiff argues further that the UCP was not a part of the contract between the bank and plaintiff, and the UCP does not memorialize all banking custom. Whether the UCP was incorporated into the contract is irrelevant to the question of ascertaining banking custom and usage. Even assuming the UCP does not memorialize all banking custom, plaintiff cannot establish a contrary custom and usage in Arizona. Plaintiff does present an affidavit of its own expert witness who testifies that the bank refused to amend the letter of credit because of its poor banking judgment in issuing the letter

of credit. This may well be true, but the plaintiff's affidavit does not establish a banking custom or usage to amend letters of credit upon the request of a customer and a beneficiary. Therefore, the Court concludes that neither good faith nor usage of trade imposes a duty upon the defendant bank to amend a letter of credit. Defendant American Bank is thereby entitled to summary judgment.

The conceptual difficulty with this case is that, at first blush, the result seems contrary to UCC policy. A letter of credit facilitates commercial transactions by substituting the credit of a bank for the credit of a buyer.

> The law is clear that an issuer bank is bound by a promise in a letter of credit, which may be enforced by a person acting in strict compliance and on good faith thereof, and the bank cannot escape liability because of the insolvency of the person to whom the letter is addressed or the customer. . . . If the rule were otherwise, it would avail a person nothing to sell his goods under a letter of credit because ultimately the credit worthiness of the buyer would be necessary to assure the seller or his assignee that payment for goods would be tendered. Since the bank's obligation was to act as an insurer of the credit of the buyer, it would be inequitable to allow it to avoid the risk which it accepted in issuing the letter of credit based upon a technical defense raised after its customer had filed bankruptcy . . . .

*Courtaulds No. Am., Inc. v. North Carolina Nat. Bank,* 387 F.Supp. 92, 103 (M.D.N.C. 1975), *rev'd* 528 F.2d 802 (4th Cir. 1975). In this action, AMF plainly relied upon the letter of credit issued by the bank. The point of delivery, plaintiff alleges, is of no concern to the bank. The bank did not have a security interest in the goods, and the bank's ability to collect from its customer will not be prejudiced by changing delivery from Arizona to Indiana. The bank's sole reason for refusal to amend the letter of credit was simply to rescue itself from its own poor judgment when the letter was issued. On these facts, the conduct of the bank is inequitable.

Equity is not the only consideration, however. For example, AMF was negligent in not discovering the mistaken place of delivery in the letter of credit and promptly seeking a correction before shipment of the goods. Matters of policy also dictate against such equitable considerations. If the Court were to impose a duty to amend a letter of credit upon an issuer bank, then future issuer of letters of credit would be faced with guessing whether a court, in hindsight, would require it to issue an amended letter of credit. Therefore,

IT IS ORDERED:

1. Plaintiff's motion for summary judgment is denied.

2. Defendant American Bank of Commerce's motion for summary judgment is granted.

3. The pretrial conference scheduled for April 17, 1978, is vacated.