**CONTINENTAL GRAIN COMPANY,**
**Plaintiff,**

v.

**MERIDIEN INTERNATIONAL BANK,**
**LIMITED, Defendant.**

No. 93 Civ. 1068 (CSH).

United States District Court,
S.D. New York.

Aug. 1, 1995.

---

Paul, Weiss, Rifkind, Wharton & Harrison, New York City (Richard A. Rosen, Paul Indig, of counsel), for plaintiff.

Townley & Updike, New York City (Philip D. Pakula, Mark S. Sullivan, Mario Diaz–Cruz, III, of counsel), for defendant.

### MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

In this diversity action brought to obtain payment under a commercial standby letter of credit, the beneficiary moves for summary judgment pursuant to Rule 56, Fed.R.Civ.P.

#### Background

Plaintiff Continental Grain Company ("CGC"), a Delaware corporation with its principal place of business in New York City, is a merchandiser of grains, rice, and other agricultural products around the world. In March, 1992 CGC contracted with Societe

Anonyme Aminou et Cie. ("SAAC"), a rice importing company in Cameroon, West Africa, to sell to SAAC's affiliate Agra International Inc. ("Agra") 9390.35 metric tons of Indian white rice for $2,929,789.20. The principals of SAAC were Al-Hadji Aminou ("Aminou") and his son, Oamaru Aminou. The rice was loaded on board the M/V Mega Luck at the port of Kandala, India and carried to the port of Douala, Cameroon, where the vessel arrived on March 20, 1992. The MEGA LUCK discharged her rice cargo into the Sebams warehouse, a bonded facility located in Douala. Discharge was completed on April 26.

To secure payment for the rice, Agra applied for and obtained from defendant Meridien International Bank Limited ("Meridien"), a Bahamian banking company headquartered in Nassau, a standby letter of credit in CGC's favor. That letter of credit, dated April 14, 1992, bearing number 023/92, and addressed to CGC, provided in part as follows:

THIS STANDBY LETTER OF CREDIT IS AVAILABLE TO YOU AS BENEFICIARY AGAINST THE FINANCIAL DEFAULT OF THE APPLICANT AGRA INTERNATIONAL INC IN RESPECT OF THEIR OBLIGATIONS UNDER THE PURCHASE OF 9390.35 METRIC TONS OF RICE FROM YOURSELVES WHICH HAS BEEN SHIPPED ON BOARD THE M/V "MEGA LUCK"

DRAWINGS UNDER THIS CREDIT ARE AVAILABLE BY YOUR DRAFTS AT SIGHT ON US BEARING THE CLAUSE "DRAWN UNDER STANDBY LETTER OF CREDIT NUMBER NAS 023/92 ISSUED BY MERIDIEN INTERNATIONAL BANK LIMITED, NASSAU, BAHAMAS" AND ACCOMPANIED BY THE FOLLOWING DOCUMENTS:

1) YOUR STATEMENT IN ORIGINAL SIGNED BY TWO OF YOUR AUTHORIZED OFFICERS CERTIFYING THAT AGRA INTERNATIONAL INC. IS IN DEFAULT OF ITS OBLIGATIONS IN RESPECT OF PAYMENT FOR 9390.35 METRIC TONS OF RICE.

2) BEFORE DRAWING HEREUNDER AND WITHIN THE VALIDITY OF THIS LETTER OF CREDIT, YOU SHALL HAVE GIVEN THE APPLICANT, AGRA INTERNATIONAL INC. AND OURSELVES TEN (10) DAYS NOTICE BY TELEX OF YOUR INTENTION TO CLAIM STATING THE NATURE OF THE DEFAULT; COPIES OF BOTH MESSAGES REQUIRED.

Immediately following this language, the letter of credit set out a series of provisions under the caption "SPECIAL CONDITIONS." The first of these provided:

THE RICE WHICH HAS BEEN OFF-LOADED AT DOUALA IN A BONDED FACILITY MUST REMAIN UNDER YOUR/OUR CONTROL AND IS TO BE RELEASED ONLY IN PROPORTION TO PAYMENTS MADE EITHER IN THE FORM OF CASH REMITTANCES, IRREVOCABLE LETTER OF CREDIT, OR COLLECTION DOCUMENTS AGAINST PAYMENT.

Agra and SAAC failed to pay for the rice discharged from the Mega Luck. On August 4, 1992 CGC moved to invoke its remedies under the April 14 letter of credit. CGC presented to Meridien a sight draft for $2,929,789.20; a statement signed by two CGC officers reciting that Agra had not paid for the rice; and copies of letters from CGC to Agra and Meridien giving ten days' notice of CGC's intention to claim under the letter. John Waugh, the Meridien officer in charge of the transaction, acknowledged at his deposition that at this time CGC presented to Meridien the documents required by the letter of credit to draw under it. Waugh dep. at 131.

But Meridien did not pay under the letter at this time. Rather, Meridien and CGC entered into the first of four agreements to extend the letter's expiration date, the last extension expiring on November 30, 1992. Meridien asked for these extensions, in the hope and expectation that SAAC and Agra would eventually pay for the Mega Luck's rice cargo. Waugh acknowledged in his deposition that if the extensions had not been agreed to by CGC, Meridien would have had

to pay under the letter of credit in response to the proper documents presented by CGC. Waugh dep. at 136.

In late November CGC, speaking through an employee named John Lestingi, advised Waugh that CGC was no longer willing to extend Meridien's obligations under the April 14, 1992 letter of credit. The parties agreed that Meridien would tender and CGC would accept a "clean" standby letter of credit to replace the April 14 letter. During the course of the discussions leading up to the issuance of the substitute letter, Waugh authorized the delivery to CGC of a letter dated December 1, 1992, stating that the documents furnished by CGC to Meridien to draw upon the original letter prior to the November 30 deadline were "in compliance with the terms and conditions of the letter of credit."

The substitute letter of credit was dated December 2, 1992, and delivered to CGC on December 4. The letter was in the amount of $2,929,789.20, with an expiration date of January 15, 1993. It recited that it was issued "for the specific purpose of providing a guarantee of payment to you for having delivered 9,930.35 MT of Indian Rice to Cameroon and replaces our letter of credit number 023/92." The December 2 letter then provided:

> In the event the beneficiary has not received cash or other documentary letters of credit, acceptable to the beneficiary, from Agra International Inc. in the following amounts and on the following dates, Meridien International Bank Limited shall pay to the beneficiary against its sight draft covering Continental Grain's invoice for the sale to Agra International of 9,930.35 MT of Indian rice on board the M/V MEGA LUCK
>
> | DECEMBER 7, 1992 | — | $1,000,000.00 |
> | DECEMBER 14, 1992 | — | 1,000,000.00 |
> | DECEMBER 23, 1992 | — | 929,789.20 |

Agra having continued in its failure to pay CGC for the rice, CGC made demands upon Meridien under the December 2, 1992 letter of credit, presenting sight drafts in the amounts specified. Meridien has refused to perform under the letter. CGC thereupon commenced this action.

CGC's complaint states one cause of action, alleging Meridien's wrongful dishonor of the December 2, 1992 letter of credit. Following extensive discovery, CGC moves for summary judgment. Meridien opposes that motion and cross-moves for additional discovery under Rule 56(f).

## DISCUSSION

Under Fed.R.Civ.P. 56(c), the moving party is entitled to summary judgment if the papers "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." On such a motion, "a court's responsibility is to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991) (citing *Knight v. U.S. Fire Insurance,* 804 F.2d 9 (2d Cir. 1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)) (citation omitted). The responding party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The non-movant cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' ... or defeat the motion through 'mere speculation or conjecture.'" *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (citations omitted). While the party resisting summary judgment must show a dispute of fact, it must also be a material fact in light of the substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

When rights and obligations under a letter of credit are at issue, a primary source of governing law is found in those cases which declare the "independence principle." *Alaska Textile Co., Inc. v. Chase Manhattan Bank, N.A.,* 982 F.2d 813, 815 (2d Cir.1992). Under that principle, a complete separation exists between the underlying commercial transaction and the letter of credit issued to

finance that transaction: a separation regarded as essential to a letter of credit's commercial utility. *Marino Ind. Corp. v. Chase Manhattan Bank*, 686 F.2d 112, 115 (2d Cir.1982). The independence principle is grounded in the doctrine that the commercial transaction and the letter of credit are independent contracts. *First Commercial Bank v. Gotham Originals, Inc.*, 64 N.Y.2d 287, 294–95, 486 N.Y.S.2d 715, 718–19, 475 N.E.2d 1255, 1258–59 (1985). "As a matter of law, a bank's obligation under a letter of credit is totally independent of the underlying transaction." *Mutual Export Corp. v. Westpac Banking Corp.*, 983 F.2d 420, 423 (2d Cir. 1993), citing and quoting *KMW Int'l v. Chase Manhattan Bank, N.A.*, 606 F.2d 10, 15 (2d Cir.1979)).

■ It follows that if the beneficiary of a letter of credit strictly adheres to the documentary requirements for payment, "the issuer's duty to pay is absolute, regardless of whether the buyer-account party complains that the goods are non-conforming." *Alaska Textile*, 982 F.2d at 816.

CGC's motion for summary judgment relies upon this governing law. The case for CGC is that the December 2 letter, having replaced the April 14 letter, required only that CGC present sight drafts to Meridien in the event Agra failed to pay for the rice. Agra did not pay; CGC has presented its sight drafts; and Meridien wrongfully dishonored the letter of credit.

Meridien does not challenge these established principles. Rather, it launches a frontal attack upon the integrity of the December 2 letter of credit. The case for Meridien is that CGC obtained the December 2 letter by fraud, and accordingly cannot enforce it. For the sake of analysis, I will hereafter refer to the December 2, 1992 letter of credit as the "replacement letter."

In order to consider Meridien's proffered defense, it is necessary to revisit events occurring prior to the issuance of the replacement letter.

That revisitation begins with an element of mystery: what happened to the rice from the m/v Mega Luck?

We have seen that the Mega Luck completed discharging the rice into the Sebams warehouse facility at Douala on April 26, 1992. CGC selected Sebams to store the rice, and insured the rice while it was in storage. CGC requested and obtained periodic reassurances from Sebams that the warehouse continued to hold the full amount of the rice designated for Agra. But as the months passed, CGC became dissatisfied with the timing and substance of Sebams' responses. In early November CGC retained an independent surveyor in Douala, J.J. Tusseau, to survey the rice in the warehouse. Tusseau conducted a survey on November 13 and reported to CGC that day that a substantial portion of the Mega Luck rice was missing. CGC complained to Sebams and Aminou, who disputed the survey. CGC sent Tusseau back to the warehouse on December 3. The surveyor confirmed that about two-thirds of the rice was missing, advising CGC of his findings on that day. There is evidence in the record to suggest that Aminou procured the release of the rice from Sebams without paying for it, conduct CGC equates with theft. I need not pursue that question further. The disappearance of the rice from the warehouse furnishes the factual predicate for Meridien's claim of fraud in the inducement. What happened to the rice is not material to the resolution of this motion.

While the surveyor's November 13 report caused CGC to give its insurers a preliminary notice of claim, CGC did not tell Meridien that some of the Mega Luck rice was missing. Instead, as recounted *supra* at 656–657, CGC advised Meridien that it would no longer extend Meridien's obligations under the original April 14 letter of credit, thereby obtaining the December 2 replacement letter. CGC first gave notice to Meridien of the missing rice in mid-December.

Meridien contends that by failing to advise it of the missing rice, CGC procured the replacement letter by fraud. Under familiar principles, that depends in part upon whether CGC was under a duty to tell Meridien that the rice was missing. Meridien derives that duty of disclosure from its perception of

its agreement with CGC. Meridien construes the special condition to the April 14 letter of credit, quoted at 656–657 *supra*, as an "explicit agreement that Continental Grain would not release the rice without payment and that Meridien would get the rice if Meridien were required to pay the purchase price." Main Brief at 22. On that construction, Meridien views "the availability of the rice" as "the core of the agreement between Meridien, as issuing bank and Continental Grain, as beneficiary," *id.* Accordingly, Meridien's argument concludes, by failing to disclose to Meridien the non-availability of the rice when it demanded and received the replacement letter, CGC procured the replacement letter by fraud.

▆▆▆ Meridien seeks to shore up that argument by reference to prior letter of credit transactions involving CGC and Agra, and to conversations and faxes exchanged between Waugh and Lestingi about the letter in suit. CGC says that Meridien's account of these conversations is inaccurate, but I need not resolve any dispute because the requirements of a letter of credit cannot be varied by communications not made a part of the letter. The letter of credit specifies the documents that the beneficiary must present to obtain payment. Extraneous or peripheral communications have no effect upon the rights of the beneficiary or the obligations of the issuing bank. An issuing bank's only legitimate interest is "in the documents to be presented," *Venizelos S.A. v. Chase Manhattan Bank*, 425 F.2d 461, 465 (2d Cir.1970), and if the beneficiary presents drafts accompanied by the proper documents as specified in the letter, the bank is "absolutely bound to make the payment under the letter of credit," *Maurice O'Meara Co. v. National Bank of N.Y.*, 239 N.Y. 386, 396, 146 N.E. 636 (1925).

▆▆▆ So the focus returns to the original April 14 letter of credit. That is so, even though CGC sues on the replacement letter. Meridien's claim that the replacement letter was procured by CGC's fraud is inextricably bound up with the April 14 letter, since it is the April 14 letter that Meridien identifies as the source of CGC's obligation to advise Meridien that the Mega Luck rice might be missing.

If the April 14 letter creates that obligation to disclose, it is only because of the special condition, inserted after the description of the documents CGC had to present to obtain payment. But I do not think that language, whatever its precise meaning[1], abrogated Meridien's obligations under the letter because the special condition did not give rise to any additional documents CGC had to present to obtain payment. Accordingly the language is at best a non-documentary condition; and non-documentary conditions do not relieve an issuing bank of its obligation to pay if the beneficiary presents the specified documents. I take that to be the holding of *Banque Worms v. Banque Commerciale Privee*, 679 F.Supp. 1173, 1180 (S.D.N.Y.) ("The clause at issue in this case merely states that the purpose of the letter of credit is to provide equity funding for the Peachtree Lakes project, and does not require that Irving produce any documentation that the funds were used for this purpose."), *aff'd*, 849 F.2d 787 (2d Cir.1988).

Surely it was open to Meridien to insist upon appropriate documentation, if it regarded "the availability of the rice" as the "core" of its agreement with CGC. For example, Meridien could have conditioned its payment under the letter upon presentation of a contemporaneous certificate from an independent surveyor that the rice was still in the warehouse. That was not done; and whether the special condition is phrased artistically or inartistically, the letter in its entirety is unambiguous in its description of the documents CGC had to present.

▆▆▆ The subject of ambiguity need not be further pursued. Generally, ambiguities in letters of credit are construed against the drafter. *Barclay Knitwear Co., Inc. v. King'swear Enterprises Ltd.*, 141 A.D.2d 241, 533 N.Y.S.2d 724 (1st Dept.1988); *Marino Industries Corp. v. Chase Manhattan Bank, N.A.*, 686 F.2d 112, 115 (2d Cir.1982) ("The corollary to the rule of strict compliance is

---

1. Meridien itself says that the special condition expressed CGC's and Meridien's underlying understandings, "albeit somewhat inartistically." Main Brief at 2.

that the requirements in letters of credit must be explicit, and that all ambiguities are construed against the bank.") (citations omitted). I have assumed that Meridien drafted the April 14 letter of credit, including the special condition. But even if CGC drafted the special condition, Meridien could not use it to infer an "explicit documentary requirement" when none exists. *Banque Worms,* 679 F.Supp. at 1180. That analysis applies equally to the December 2 replacement letter. Meridien says CGC drafted its text. I accept that to be true. Nonetheless, Meridien signed it; the explicit documentary requirement was limited to sight drafts; and CGC has presented them.

Waugh acknowledged at his deposition that CGC's presentments under the April 14 letter conformed to that letter's documentary requirements; and that if Meridien had not issued the December 2 replacement letter (thereby buying more time), the bank would have had no defense to a presentment under the original letter. To be sure, Waugh also says that if he had known the rice missing, he would not have signed the replacement letter. That declaration has the hollow ring of afterthought. If Meridien had not issued the replacement letter, it would have been required to honor the original letter.

This discussion has assumed that the defense of fraud in the transaction is available to a bank issuing a letter of credit. In *Banque Worms* Judge Conner held that it is not, characterizing fraud in the transaction as "a narrow exception to the independence principle," and limiting it "to situations in which the wrongdoing of the *beneficiary* has permeated the entire transaction." 679 F.Supp. at 1182 (emphasis in original; citations omitted). Neither the New York Court of Appeals or the Second Circuit appear to have squarely addressed the issue. The question is pertinent because a duty to disclose arises only in the context of fraud; and if fraud in the inducement is not available to an issuing bank, the existence *vel non* of the elements of fraud need not be considered.

I need not address the question in the case at bar, because it is clear that in any event Meridien cannot sustain the defense of fraud.

Under New York law, upon which both parties rely, a claim of fraud in the inducement through fraudulent concealment requires (1) a relationship between the contracting parties that creates a duty to disclose, (2) knowledge of the material facts by the party bound to make such disclosures, (3) non-disclosure, (4) scienter, (5) reliance, and (6) damages. *Cooperative Agricole Groupement De Producteurs Bovins De L'Quest v. Banesto Banking Corp.,* No. 86 Civ. 8921 (PKL), 1989 WL 82454 at 17, 1989 U.S.Dist. LEXIS 8368 at 52 (S.D.N.Y. July 19, 1989). Even in the absence of a fiduciary relationship (and none between CGC and Meridien appears), a duty to disclose may arise "where one party possesses superior knowledge *not readily available to the other,* and knows that the other is acting on the basis of mistaken knowledge." *Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank,* 731 F.2d 112, 123 (2d Cir.1984) (emphasis added).

In the case at bar, Meridien cannot show that knowledge of the rice's whereabouts was not "readily available" to it. Agra was Meridien's customer. Aminou was a man with whom Meridien had developed a banking relationship. Waugh had helped Aminou and his son create Agra, a Bahamian corporation headquartered, like Meridien itself, in Nassau. Agra and Aminou could not with good grace have resisted demands by Meridien for reassurances that the rice remained in the warehouse; and if they seemed evasive, Meridien could have made its own inquiry. The Sebams warehouse was a public facility. Meridien had a branch office in Douala. No reason appears why Meridien could not have retained a surveyor of its own to keep a weather eye on the rice in the warehouse as the months went by without Agra having paid for it.

In addition, it is clear that Meridien's obligation to pay under the April 14 letter of credit had accrued before the bank bought more time by issuing the December 2 replacement letter. I have noted Waugh's concession that CGC's repeated presentments of the documents specified in the April 14 letter conformed to that letter and obligated Meridien to pay under it. In that circumstance, Meridien cannot escape liability by arguing

that it was fraudulently induced to issue the replacement letter. "[O]ne cannot be induced to tender a performance which is required as a part of a preexisting contractual obligation.".... Thus, a party "cannot claim to have been defrauded into doing what it was already legally bound to do." *Megaris Furs, Inc. v. Gimbel Brothers, Inc.,* 172 A.D.2d 209, 568 N.Y.S.2d 581, 584 (1st Dept. 1991) (citations omitted). Meridien was legally bound to pay CGC for the Mega Luck rice under the preexisting April 14 letter, and would have been called upon to do so if it had not issued the replacement letter. Fraudulent inducement is not made of such stuff as this.

■ Stated in somewhat different terms, a party claiming fraud must show that the fraud caused the injury suffered (here, Meridien's obligation to pay under the replacement letter). To establish causation, the victim of fraud must show both transaction causation—that the fraud caused the victim to engage in the transaction in question—and loss causation—that the misrepresentations or omissions caused the economic harm. *Bennett v. United States Trust Company of New York,* 770 F.2d 308, 313 (2d Cir.1985), *cert. den.,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). *Bennett* involved a securities fraud claim, but its analysis is not limited to that particular area. In the case at bar, the most that Meridien has arguably shown is transaction causation—if Waugh had known the rice was missing, he says he would not have issued the replacement letter. But Meridien has not and cannot show loss causation. The economic harm to Meridien is its liability under the letter of credit; and that liability had accrued under the April 14 letter, as Meridien itself concedes.

The parties' voluminous briefs raise other issues, but in the view I take of the case, I need not consider them. CGC is entitled to summary judgment.

■ Meridien's cross-motion seeks to defer decision on summary judgment until it has deposed three witnesses: a CGC employee who participated in two telephone conference calls relating to the replacement letter; CGC's risk manager in its in-house insurance department; and a representative of Fire-man's Fund, CGC's insurer. Meridien's cross-motion lies under Rule 56(f), which gives the trial court discretion to allow further discovery when it appears "from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavits facts *essential to justify the party's opposition ...*" (emphasis added). I deny the cross-motion because the designated witnesses are peripheral players at most. The present record, amassed from the testimony of the principal participants and the key exhibits, amply sets forth the facts upon which Meridien seeks to justify its opposition to summary judgment. Meridien's difficulty is that those facts are insufficient in law to sustain a defense. The testimony of these three individuals would not change that.

For the foregoing reasons, plaintiff's motion for summary judgment is granted and defendant's cross-motion for additional discovery is denied.

Counsel for plaintiff are directed to settle an order and judgment consistent with this opinion on seven (7) days' notice within ten (10) days of the date of this opinion. If the undersigned is away from the Courthouse, the judgment should be settled before the Part I Judge.

It is SO ORDERED.